FILED
December 12, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: MAM
DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**Plaintiff**<br>**v**<br>**ALEXIS ALDAIR CHAVEZ**<br>**Defendant** | **Case No. SA-24-CR-00538-JKP**<br><br>**SUPERSEDING INFORMATION**<br><br>**COUNT 1: 18 U.S.C. § 1962(d)**<br>**RICO Conspiracy**<br><br>**COUNT 2: 18 U.S.C. § 2252A(a)(2)**<br>**Distribution of Child Pornography**<br><br>**COUNT 3: 18 U.S.C. § 2252A(a)(5)(B)**<br>**Possession of Child Pornography** |

**THE UNITED STATES ATTORNEY CHARGES:**

**COUNT ONE**
**[18 U.S.C. §1962(d)]**

Introduction

At all times relevant to this Superseding Information:

1. The defendant **Alexis Aldair Chavez**, and others known and unknown, were members and associates of "764," a criminal organization that engaged in the possession, production, and distribution of child sexual abuse material (CSAM) and acts and threats involving murder and other criminal offenses. The 764 organization has changed names over time and includes related subsidiaries, such as "8884" and "7997" that feed into the larger 764 organization.

2. Members and associates of 764 methodically targeted vulnerable, underage

populations across the United States and abroad. Members and associates of 764 frequently used social media communication platforms to connect with individual victims, wherein members and associates of 764 coerced and blackmailed victims to produce videos, photos, and other on-line "content" involving child pornography, child sexual abuse, and "gore material" such as self-mutilation, abuse of siblings, mistreatment of animals, suicide, and other acts of violence and harm. Members and associates of 764 engaged in such conduct to desensitize victims to violence and to otherwise corrupt and "groom" victims to commit and record future acts of violence and self-harm. Members and associates of 764 engaged in such conduct to, among other things, normalize violence and the possession, production, and sharing of CSAM and gore material.

3.     Members and associates of 764 targeted and groomed individual victims online, particularly underage females, often through synchronized group chats where members work together to exploit victims. During the chats, members and associates of 764 showed pictures and videos depicting CSAM, self-harm and mutilation, and harm to animals that were obtained from other individuals previously targeted and abused by members and associates of 764. Members and associates of 764 coerced and blackmailed victims during these chats requiring victims commit acts of self-mutilation, sexual acts, harm to animals, sexual exploitation of siblings, suicide, acts of violence against others, and murder.

4.     Members and associates of 764 recorded, edited, and compiled photographs and videos of targeted individuals committing the above-described acts. Members and associates of 764 then shared such photographs and videos on social media platforms for several reasons, including: to gain notoriety among other members and associates of the 764 network; to maintain and increase status within the network based, in part, on the amount and type of "content" they were able to compile from different victims; and to spread fear among targeted

individuals by threatening to release these images to the victim's family and/or the general public all in order to promote violence in general society. Such "content" included video-recorded or live web-based broadcasts of victims producing CSAM or committing acts of self-mutilation or other acts of violence. Members and associates also enhanced their status within the 764 network by "owning" victims, wherein victims were directed to "fansign," or cut the 764 member's username, onto the victims' bodies, sometimes carving through the skin to the bone. Compelling victims to commit acts of violence against themselves, others, or animals generally increased 764 members' and associates' status. Compelling a victim to livestream his/her own suicide conferred the highest rank to a 764 member and increased that member's stature within the 764 network.

5. Defendant Alexis Aldair Chavez, a/k/a "Zack," a/k/a "Zack8884" (Chavez or Defendant) was an administrator and online leader of the "8884" subsidiary of 764.

The Racketeering Enterprise

6. At all times relevant to the Superseding Information, 764, including its leaders, members, and associates, constituted an "enterprise," as that term is defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce (the "764 Enterprise" or the "Enterprise"). The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. Chavez and others were members and associates of the 764 Enterprise.

Purposes of the Enterprise

7. The purposes of the 764 Enterprise included, but were not limited to, the following:

a. Working in concert with other enterprise members and associates toward a common purpose of corrupting and exploiting youth to spread violence in society;

b. Using electronic communication and online social media communication platforms as mediums to support the possession, production, dissemination, and sharing of CSAM and extreme gore media to spread violence in civilized society; and

c. Hiding criminal activities of enterprise members and associates and hindering, obstructing, and preventing law enforcement officers from identifying, apprehending, and successfully prosecuting members and associates of the enterprise engaged in criminal activity.

Means and Methods of the Enterprise

8. Among the means and methods by which members and associates of the 764 Enterprise conducted and participated in the conduct of the Enterprise were the following:

a. Members and associates of the Enterprise used means and facilities of interstate and foreign electronic communication and online social media communications platforms including, but not limited to, TikTok, Telegram, and Discord to target, coerce and blackmail victims and to support the possession, production, dissemination, and sharing of CSAM and gore media in order to encourage violence in general society;

b. Members and associates of the Enterprise targeted victims through synchronized group chats and coerced and blackmailed victims to comply with demands of the Enterprise including, but not limited to, coercing and blackmailing victims to perform acts of self-mutilation, online and in-person sexual acts, harm to animals, sexual exploitation of siblings, acts of random violence, suicide, and murder in order to

encourage violence in general society;

c. Members and associates of the Enterprise used interstate communications to threaten victims with violence or death if victims failed to comply with demands of the Enterprise and its members and associates in order to encourage violence in general society;

d. Members and associates of the Enterprise located potential victims, mostly girls and young women, online and then began to "groom" the victims in order to encourage violence in general society. The "grooming" process frequently began with Enterprise members and associates building a false sense of trust with victims and then encouraging victims to send pictures of themselves, their surroundings, and personal information. As the grooming process continued, the Enterprise members and associates enticed victims to send nude photographs of themselves. Enterprise members and associates then attempted to coerce and force victims to engage in more violent sexual behavior, to cut themselves, and to commit other acts of self-harm. If victims resisted demands for additional CSAM and violent material, the Enterprise members and associates used the victim's personal information and threatened to disseminate nude photographs of victims to victims' family, friends, and community. Members and associates of the Enterprise aimed to desensitize minors to violent content, subsequently convincing the victims that cutting themselves was normal.

<u>The Racketeering Conspiracy</u>

9. From at least as early as May 2022, the exact date being unknown, and continuing until at least July 22, 2024, in the Western District of Texas and elsewhere, the defendant

**ALEXIS ALDAIR CHAVEZ,**

and others known and unknown, each being a person employed by and associated with the 764 Enterprise, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), which pattern of racketeering activity consisted of multiple acts indictable under 18 U.S.C. §§ 2251 and 2252 (relating to the sexual exploitation of children).

10. It was part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the 764 Enterprise.

Overt Acts

11. In furtherance of the racketeering conspiracy, and to effect the objects thereof, the Defendant and others known and unknown committed and caused to be committed the following acts, among others, in the Western District of Texas and elsewhere:

a. On or about May 2022, the exact date unknown, Defendant was introduced to 764 by a 764 Co-Conspirator. This 764 CO-Conspirator recruited Defendant to join a particular 764 subsidiary Discord server.

b. In or about 2022, the exact date unknown, Defendant saw on the previously mentioned 764 subsidiary Discord server "edits"—that is, videos consisting of multiple smaller clips from longer videos that were then grouped together, often depicting gore—posted by other 764 members and associates, including several video recordings of human beheadings. After Defendant watched these videos and expressed an interest in seeing more, a 764 member and Co-Conspirator recruited Defendant to join the 764 subsidiary

7997 Telegram channel. Users on the 7997 channel posted more gore videos like those on the previously mentioned 764 subsidiary Discord server but also posted bestiality and "extortion" videos. The "extortion" videos were CSAM video recordings that were produced after the victims were extorted by 7997 members. Defendant was not able to speak with 764 members about the extortions at first but eventually earned the right to communicate in the 7997 chat rooms by killing his cat, recording the killing, and posting it on the channel for others to see. Once admitted to the chats, Defendant watched other members of the channel extort their victims for "content," including 7997 members coercing victims to cut themselves and commit acts of self-mutilation.

c. From on or about October 16, 2023, to on or about July 24, 2024, many of the more active members of 764 and channels within the 764 Enterprise, including but not limited to 8884, attempted to force their victims to kill themselves in live-streamed or recorded videos by overdosing on drugs, asphyxiation, or hanging themselves.

d. In or about October 2023, the exact date unknown, Defendant and unindicted Co-Conspirator 1 attempted to have Minor Victim 2 (MV2), a minor female, kill herself in a video chat by overdosing on pills. Defendant believed the victim would not have attempted suicide had it not been for his grooming of her over the course of time. Defendant and Co-Conspirator 1 recorded MV2's attempted suicide to obtain "content" that would allow them to maintain and increase their status in the 764 Enterprise.

e. On or about December 29, 2023, the Defendant and Co-Conspirator 1, coerced and blackmailed Minor Victim 1 (MV1), a minor female, to cut her own tongue and to torture and kill a cat on a live video call. Later, Defendant and Co-Conspirator 1 coerced and blackmailed MV1 for more content and forced MV1 to take her clothes

off, rub mustard on her breasts, cut herself, and cut her hair off and stick the hair into her anus.

f. On or about December 2023, the exact date unknown, Defendant and MV2 worked together to coerce and blackmail a female victim from the United Kingdom (UK). Defendant and MV2 forced the victim to get naked on camera, cut herself, drink bong-water and toilet water, and insert foreign objects inside of herself while masturbating.

g. On or about December 2023, the exact date unknown, Defendant and MV2 also extorted another female and, among other things, forced this victim to cut Defendant's moniker "Zack" into herself and to drink soap.

h. On or about December 2023, Defendant and Co-Conspirator 2 worked in concert with one another to groom and then extort several other minor females. In at least one instance, Defendant and Co-Conspirator 2 coerced a female victim to light her arm on fire and to have the fire burn through her skin and deeper into her body while on a recorded video chat within the 8884 channel.

i. On or about 2023, the exact date unknown, Chavez and Co-Conspirator 2 also groomed minor Victim 3 (MV3). MV3 was a minor female who was forced to drink her own urine as part of the grooming process. Co-Conspirator 2 shared videos with Chavez in which Co-Conspirator 2 forced MV3 to attempt to overdose on unknown pills.

j. On or about 2023, MV3 began to commit online acts of violence in furtherance of the 764 enterprise, and in one instance extorted an older male victim to insert objects into his own anus.

k. On or about January 23, 2024, the Defendant and unindicted Co-Conspirator 1 threatened and coerced MV2 to create an approximately 18-minute video with audio.

MV2 to "bite the toes off," and the MV2 inserted the dead rat's paw into her mouth and began to bite the dead rat's toes off. Unindicted Co-Conspirator 1 and Defendant then commanded MV2 to put the dead rat's tail in her mouth and MV2 complied and began to chew on the tail. Unindicted Co-Conspirator 1 and Defendant then ordered MV2 to squirt the contents of a bottle filled with an unknown solution into a cup, dip the dead rat into the cup, and then drink the solution. MV2 complied, drank the solution and gagged. Unindicted Co-Conspirator 1 then threatened MV2 stating, "You want me to send that rat video out? I'll send it right now!"

m. On or about May 15, 2024, the Defendant sent MV2 sexting images MV2 previously made for Defendant, which were comprised of nine color videos depicting MV2 nude displaying and touching her genitalia with her fingers.

n. On or about June 28, 2024, Defendant created a backup Telegram group called "8884 backup" as a subsidiary group of 764.

o. On or about June 29, 2024, Defendant invited MV2 to a private chat called "8884 Hellchamber." On or about July 3, 2024, Defendant taught MV2 about coercion methods to gain new victims.

p. From on or about June 28, 2024, to on or about July 22, 2024, Defendant acted as an administrator for various online 764 subsidiary groups including "8884 backup" and "8884 Hellchamber."

q. On or about July 18, 2024, the Defendant, using his Telegram User account "Zack," distributed three images of a beheaded cat each with a note card stating either "ZACK 8884", "8884 LAZZARUS", or "ZACK IRLT 8884".

r. On or about July 22, 2024, when FBI executed a search warrant at Defendant's

residence, Defendant came out the back door and threw his cellphone over a neighbor's fence in an attempt to hide evidence of his possession of CSAM and gore material he obtained as part of participating in the 764 enterprise.

All in violation of Title 18, United States Code, Section 1962(d).

**COUNT TWO**
**[18 U.S.C. §2252A(a)(2)]**

On or about May 15, 2024, in the Western District of Texas, Defendant,

**ALEXIS ALDAIR CHAVEZ,**

did knowingly distribute child pornography as defined in Title 18, United States Code, Section 2256(8)(A) using any means and facility of interstate and foreign commerce, and that has been shipped and transported in and affecting interstate and foreign commerce, by any means, including by computer.

All in violation of Title 18, United States Code, Section 2252A(a)(2).

**COUNT THREE**
**[18 U.S.C. § 2252A(a)(5)(B)]**

On or about July 22, 2024, within the Western District of Texas, the Defendant,

**ALEXIS ALDAIR CHAVEZ,**

did knowingly possess material, specifically an Apple iPhone 13 Pro Max cellular telephone, that contained an image of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), that involved a prepubescent minor, that was shipped and transported in and affecting interstate and foreign commerce, and was produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, including by computer,

All in violation of Title 18, United States Code, Section 2252A(a)(5)(B).

**NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE**

FORFEITURE ALLEGATION

1. The allegations contained in Count One of this Indictment, RICO conspiracy in violation of 18 U.S.C. §1962(d), are re-alleged and incorporated by reference as if fully set forth in support of this forfeiture.

2. Upon conviction of the offense alleged in Count One of this Indictment, the Defendant, Alexis Aldair Chavez, shall forfeit to the United States, pursuant to 18 U.S.C. § 1963:

   a. any interest acquired and maintained in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

   b. any interest in, security of, claims against, and property and contractual rights of any kind affording a source of influence over, the enterprise which the defendant(s) has established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2); or

   c. any property constituting and derived from any proceeds which the defendant(s) obtained, directly and indirectly, from racketeering activity [or unlawful debt collection], in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

3. To the extent that property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 1963, as a result of any act or omission by the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States of America, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendant(s) up to the value of the property described above as being subject to forfeiture.

All pursuant to Title 18, United States Code, Section 1963.

[*See* **Fed. R. Crim. P. 32.2**]

**Sexual Exploitation of Children Violations and Forfeiture Statutes**

As a result of the foregoing criminal violations set forth above, the United States of America gives notice to Defendant, **ALEXIS ALDAIR CHAVEZ**, of its intent to seek the forfeiture of certain property subject to forfeiture, including but not limited to an Apple iPhone 13 Pro Max cellular telephone seized by law enforcement during the investigation of this case, upon conviction and pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. §§ 2253(a)(1), (2), and (3), which states:

**Title 18 U.S.C. § 2253. Criminal forfeiture**

> **(a) Property subject to criminal forfeiture.**-A person who is convicted of an offense under this chapter involving a visual depiction described in section 2251, 2251A, 2252, 2252A, or 2260 of this chapter or who is convicted of an offense under section 2251B of this chapter, or who is convicted of an offense under chapter 109A, shall forfeit to the United States such person's interest in-
>
> > **(1)** any visual depiction described in sections 2251, 2251A, 2252, 2252A, or 2260 of this chapter, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of this chapter;
> > **(2)** any property, real or personal, constituting, or traceable to gross profits or other proceeds obtained from such offense; and
> >
> > **(3)** any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

JUSTIN SIMMONS

UNITED STATES ATTORNEY

BY: ______________________________
MARK ROOMBERG/WILLIAM HARRIS
Assistant United States Attorney